Green, Juclge,
delivered the opinion of the court:
Plaintiff brings this suit to recover $5,011.73 alleged to be due as a refund on account of the refusal of the Commissioner of Internal Revenue to allow a deduction of $10,000 in its income-tax return for 1918; and alternatively asks judgment for $860.84 on account of the refusal of the commissioner. to allow a similar deduction in its income-tax return for 1919, which it alleges should' be made if the deduction is not allowed for 1918.
It appears that in 1917 it was discovered that an employee of the plaintiff had embezzled $18,208.02 from it. Plaintiff held a bond indemnifying it against such loss in the sum of $10,000. In 1918 the bonding company denied liability and plaintiff brought suit against it upon the bond. Later in the same year the court in which suit was begun entered judgment against the plaintiff, but upon appeal being taken, the Supreme Court of West Virginia in 1920 reversed the lower court and gave judgment against the bonding company for $10,000, which was thereafter in the same year paid to plaintiff.
In making its income-tax return for 1917 plaintiff was allowed a deduction for the amount of the embezzlement above the amount of the bond, which for that year it carried on its books as an asset. In its 1918 tax return the plaintiff deducted $10,000 from its income (being the amount for which suit was then pending against the bonding company) as a “ debt ascertained to be worthless and charged off within *472 the taxable year.” In 1920 the plaintiff included as income the $10,000 paid by the bonding company on the judgment rendered upon the bond, and by reason thereof paid $539.03 over and above what it would have otherwise paid. The Commissioner of Internal Revenue, however, subsequently held that the $10,000 should not have been included in plaintiff’s income for 1920 and refunded the tax thereon. Upon a final audit of plaintiff’s 1918 tax return, the commissioner disallowed the deduction of $10,000 claimed as a result of the embezzlement and the denial of liability by the bonding company; and by reason of such disallowance assessed the plaintiff for additional taxes in the sum of $5,011.73 for which, as stated above, it asks judgment.
The contention of the plaintiff is that it might have claimed a loss for 1917, but at that time it did not know that the bonding company disclaimed liability on the bond; that it was right in making the deduction of $10,000 in 1918, because the bonding company had then denied the liability; and that if this deduction could not be rightfully made for 1918, it at least should be made for 1919, when the lower State court rendered judgment against plaintiff on the bond. It is urged on behalf of plaintiff that the events and transactions above set forth for the purposes of income-tax returns changed the loss occasioned by the embezzlement into a debt owed by the bonding company.
The defendant contends, on the contrary, that losses by embezzlement must be deducted, if at all, for the year in which the embezzlement occurred, and that in fact there was no deductible loss except for the sum above the amount of the bond, which sum was allowed the plaintiff in its 1917 return.
The revenue acts in force at the time of the transactions involved allow as deductions:
“(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise;
“(5) Debts ascertained to be worthless and charged off within the taxable year.”
*473 The Board of Tax Appeals has consistently held in several cases that where an embezzlement occurs the loss resulting therefrom is deductible for the year in which the embezzlement occurred. The embezzlement gave rise to an indebtedness on the bond, and the theory of plaintiff is that when the bonding company denied liability this became a “ debt ascertained to be worthless,” and being charged off in the year 1918 it was entitled to a deduction for that year in the amount of the bond; or, failing in this, plaintiff contends that in any event it was entitled to the deduction in 1920, when the lower court, in the suit upon the bond, rendered judgment in favor of the bonding company. Several cases are cited in support of this contention, but it is not necessary to review them here. It is clear that they were decided upon a very different state of facts, and we think there is nothing in the language used in deciding these cases that is applicable to the case at bar. That plaintiff sustained a loss when the embezzlement occurred does not seem to us to admit of argument or discussion, and the fact that the loss created an indebtedness on the bond would not prevent the application of the law as to when the loss occurred. An examination of the statutory provisions makes the meaning and intent of the law quite plain. The provisions of subdivision (4), quoted above, were clearly intended to apply to just such a case as we have here — ■ where a loss was sustained which was deductible if not compensated for by insurance or otherwise, but if so compensated was not deductible. Obviously, as it seems to us, subdivision (5) was not intended to apply to cases of this character. The-Treasury regulations accord with this construction of the statute.
Much is said in the argument for plaintiff as to what plaintiff believed with relation to the collectibility of the claim on the bond, but plaintiff’s belief alone does not determine the matter. If it did, plaintiff’s beliefs would control instead of what we think is the plain intendment of the law. Where a loss has created a claim against another party, *474 in order to justify treating the claim as unenforceable, the attendant circumstances must be such as to indicate that action or proceedings to collect the claim would be unavailing. This is in accordance with the regulations with reference to bad debts, and is, we think, the true rule. The recovery of judgment on the bond sufficiently proves that such circumstances did not exist.
Plaintiff also urges that when the lower court rendered judgment in favor of the bonding company its claim on the bond was extinguished under the decisions of the West Virginia courts; and that when a writ of error was taken out in the Supreme Court for the purpose of reviewing the judgment an entirely new claim and new case was created. This, we think, was immaterial. It was the duty of plaintiff to take any legal steps which might enforce payment, unless the circumstances were such that there could be no reasonable expectation of obtaining payment thereby. The appeal to the Supreme Court was only another step in enforcing the plaintiff’s claim which related back to the loss caused by the embezzlement.
Having thus concluded that plaintiff’s claim, if any, rests upon a loss and not upon a bad debt, the next question is whether the loss which was sustained was a deductible one. On this point it appears plain that the loss was, in the language of the statute, “compensated for” through the bond and the judgment finally obtained upon it. It was not therefore a deductible loss.
It follows that the rulings of the commissioner with reference to the assessment and returns of plaintiff’s income tax for the years in question were right, and this conclusion makes it unnecessary to consider the other points which arise in the case. Plaintiff is not entitled to recover, and it is ordered that its petition be dismissed.
Sinnott, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.